UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES | ) | |
| | ) | |
| v. | ) | CRIMINAL ACTION 03-246 (RMC) |
| | ) | |
| MICHAEL GIBBS | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Michael Gibbs is a deported alien who re-entered this country without permission. He challenges his criminal indictment for Unlawful Reentry of a Removed Alien, 8 U.S.C. § 1326(a), as based on an invalid Order of Deportation dated March 5, 1997. Because he contests the validity of his original deportation, Mr. Gibbs claims that the United States cannot establish that he was lawfully deported. He asserts that the Court must dismiss the indictment pursuant to 8 U.S.C. § 1326(d). The Court concludes that the Order of Deportation was valid and that Mr. Gibbs is, therefore, properly charged.

**I. BACKGROUND**

Mr. Gibbs is a native of Trinidad, who entered the United States as a Lawful Permanent Resident on December 2, 1971, at the age of eleven. He never acquired U.S. citizenship. His was convicted by a jury in Prince Georges County, Maryland, on one count of possession of cocaine on April 18, 1990. He was sentenced on July 27, 1990, to four years' imprisonment, with all but time served (224 days) suspended, and five years of supervised probation.

The Immigration and Naturalization Service ("INS")[1] issued an Order to Show Cause on December 7, 1990, directing Mr. Gibbs to show why he should not be deported. The matter was continued several times and eventually reached a hearing on April 11, 1995. Mr. Gibbs admitted to deportability and requested leave to file an application for waiver from deportation under § 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c). The Immigration Judge continued the case and gave Mr. Gibbs until May 11, 1995, to file his application, which was filed on May 8, 1995.

The INS submitted a motion on July 31, 1996, asking the Immigration Judge to pretermit Mr. Gibbs' § 212(c) application and arguing that § 440(d) of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 et seq. (1996), barred relief.[2] However, at a hearing on July 19, 1996, the Immigration Judge declared his intention to allow Mr. Gibbs to proceed with his application, and on August 5, 1996, the Immigration Judge denied the INS motion. This decision was based on a decision of the Board of Immigration Appeals ("BIA") that § 212(c) applications filed and pending prior to the enactment AEDPA remained eligible for consideration. *In re Soriano*, 21 I. & N. Dec. 516, 1996 WL 42688 (BIA 1996) (interpreting congressional intent "that aliens with applications pending on April 24, 1996, should not be statutorily barred from section 212(c) relief by operation of the AEDPA"). The INS Commissioner certified the BIA decision in *Soriano* to former Attorney General Janet Reno, who

---

[1] The INS is now known as United States Citizenship and Immigration Services, which falls under the umbrella of the Department of Homeland Security. Former terminology is used here.

[2] Section 440(d) of AEDPA amended § 212(c) of the Immigration and Naturalization Act, effective April 24, 1996. The amendment provided that § 212(c) waivers are not available to aliens deportable for committing specified criminal offenses, including drug offenses.

vacated *Soriano* but did not overrule it. After various continuances, Mr. Gibbs' § 212(c) hearing was scheduled for March 5, 1997. On February 27, 1997, Attorney General Reno issued her decision concerning *Soriano*. She concluded that the amendment to § 212(c) applied to all proceedings in which an application was pending when AEDPA became effective. Based on this binding decision, the Immigration Judge reconsidered his denial of the motion to pretermit, denied Mr. Gibbs' application for a waiver, and ordered him deported.

Through counsel, Mr. Gibbs appealed the decision of the Immigration Judge to the BIA on March 31, 1997. After obtaining an extension of time, counsel filed Mr. Gibbs' appellate brief on December 16, 1997, six days late. On April 29, 1998, BIA issued an interim order, finding that there were inadequate grounds to accept the untimely brief. BIA issued a final order on September 8, 1998, denying Mr. Gibbs' appeal and concluding that he was "statutorily ineligible for relief" under the Attorney General's *Soriano* decision.

Proceeding *pro se*, Mr. Gibbs filed an appeal with the Fourth Circuit Court of Appeals on October 8, 1998. His appeal was initially dismissed on December 2, 1998, for failure to file a brief, but was reinstated on December 9, 1998, after a brief was filed. The INS moved to dismiss the appeal; this motion was granted on July 9, 1999. Mr. Gibbs was informed by the Notice of Judgment issued that same day that he had a right to file a petition for rehearing.

In the meantime, the INS had issued a Warrant of Removal for Mr. Gibbs on December 14, 1998, and Mr. Gibbs was arrested in Maryland for distribution of cocaine, as well as other counts, on April 27, 1999. Mr. Gibbs pled guilty to one count of distribution of cocaine in Prince Georges County, Maryland, on August 26, 1999. Although he filed a motion to withdraw this plea on September 5, 1999, that motion was denied on October 4, 1999.

Mr. Gibbs filed a petition for rehearing in the Fourth Circuit on September 7, 1999, but that petition was denied on November 12, 1999. His legal avenues exhausted, Mr. Gibbs was deported on December 15, 1999.

After Mr. Gibbs was charged with one count of unlawful re-entry of a removed alien on March 21, 2003, he sought a stay of the instant criminal case in order to pursue a motion to vacate the judgment of his 1990 conviction for possession of cocaine. The Court granted the motion over the government's objection and stayed this case. On September 29, 2004, the motion to vacate was denied by Judge Hovey Johnson, the trial judge who presided over Mr. Gibbs' trial in 1990. Mr. Gibbs' appeal was denied as well.

Before this Court, Mr. Gibbs now argues that the Attorney General's analysis in *Soriano* has been disavowed by the Supreme Court, *Immigration and Naturalization Serv. v. St. Cyr*, 533 U.S. 289 (2001), *superseded by statute*, REAL ID Act of 2005, Pub. L. No. 109-13, Div. B. 119 Stat. 231, 302, *as recognized in Enwonwu v. Chertoff*, 376 F. Supp.2d 42, 82 (D. Mass. July 12, 2005), and that his deportation proceedings were infirm because his application for § 212(c) relief was pretermitted.

## II. ANALYSIS

Mr. Gibbs relies in the first instance on the Supreme Court's *St. Cyr* decision, which found Attorney General Reno's *Soriano* decision constitutionally infirm. *See St. Cyr,* 533 U.S. at 326. Enrico St. Cyr came to the United States from Haiti as a lawful permanent resident in 1986. He pled guilty in 1996 to selling a controlled substance; this conviction made him deportable. However, removal proceedings were not commenced against Mr. St. Cyr until April 1997, after the enactment of AEDPA and the September 30, 1996, enactment of the Illegal Immigration Reform and

Immigrant Responsibility Act of 1996 ("IIRIRA").  While AEDPA identified certain offenses, including drug offenses, that precluded waivers from deportation, § 304(b) of IIRIRA repealed § 212(c) altogether and "replaced it with a new section that gives the Attorney General the authority to cancel removal for a narrow class of inadmissible or deportable aliens." *St. Cyr*, 533 U.S. at 297.  Pursuant to these laws and the Attorney General's *Soriano* decision, the INS denied consideration of a waiver under § 212(c) to Mr. St. Cyr.  The Supreme Court addressed the question of whether § 304(b) of IIRIRA eliminated Mr. St. Cyr's eligibility for a waiver even though his guilty plea in March 1996 had, at that time, made him eligible.

Noting that "[r]etroactive statutes raise special concerns," 533 U.S. at 315 (citing *Landgraf v. USI Film Products*, 511 U.S. 244, 266 (1994)), the Supreme Court held that the INS had "impose[d] an impermissible retroactive effect on aliens who, in reliance on the possibility of § 212(c) relief, pleaded guilty to aggravated felonies." *Id.*  The Court commented that "IIRIRA's elimination of any possibility of § 212(c) relief for people who entered into plea agreements with the expectation that they would be eligible for such relief clearly 'attaches a new disability in respect to transactions or considerations already past.'" *Id.* at 321 (citation omitted).  Finally, the Court concluded that "the fact that § 212(c) relief is discretionary does not affect the propriety of our conclusion.  There is a clear difference, for the purposes of retroactivity analysis, between facing possible deportation and facing certain deportation." *Id.* at 325.  Importantly, however, the Supreme Court focused its attention and analysis entirely on the potential upset of settled expectations of an alien who pled guilty before the new laws became effective; the Court did not address the consequences of a jury verdict after trial. *Id.* at 321-24; *see also St. Cyr v. Immigration and Naturalization Serv.*, 229 F.3d 406, 420-21 (2d Cir. 2000), *aff'd*, *St. Cyr*, 533 U.S. 289 ("We do not

rule today that application of the 1996 amendments to pre-enactment convictions has an impermissible retroactive effect.").

Certainly, an alien who is convicted after a full trial could find himself in a different place as a matter of equity compared to the alien who pled guilty without a trial, in reliance on the possibility of a waiver from deportation. However, Congress gave no indication that it intended different effective dates for AEDPA or IIRIRA depending on the status of the alien's judgment, and the Court is loath to infer different effective dates, particularly since the Immigration Judge deemed Mr. Gibbs' waiver application timely and worthwhile. For these reasons, the Court adopts the conclusion, although not the rationale, of *St. Cyr* and finds that Mr. Gibbs would have been eligible for consideration for a § 212(c) waiver but for the Attorney General's erroneous interpretation of AEDPA and IIRIRA.

Nonetheless, the Court is unable to grant any relief to Mr. Gibbs here. The INA bars any challenge by a criminal defendant to a prior deportation order unless the defendant meets each of three requirements:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d); *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987).[3] The United States attempts to argue that Mr. Gibbs failed to exhaust his administrative remedies but ultimately

---

[3] Section 1326(d) codified the *Mendoza-Lopez* decision and specified a "three-step process for collaterally challenging an underlying deportation proceeding." *United States v. Lara-Unzueta*, 287 F. Supp.2d 888 (N.D. Ill. 2003).

concedes "he did exhaust his administrative remedies by appealing to the BIA, petitioning the Fourth Circuit, and then petitioning for a rehearing in the Fourth Circuit." Opp. at 13.  While it is true that Mr. Gibbs might have petitioned for lawful permission to re-enter this country, *see* 8 C.F.R. § 212.2, or sued from outside the United States to have his deportation overturned, as the government argues, *see* Opp. at 13, neither of those points speaks to whether he exhausted his administrative remedies concerning the initial deportation order.  Inasmuch as he undoubtedly did so, the first requirement of the statute is met.

However, Mr. Gibbs cannot meet the second requirement of § 1326(d).  Mr. Gibbs was not deported before his appeal was finalized and was not deprived of judicial review.  *See United States v. Perez*, 330 F.3d 97 (2d Cir. 2003); *United States v. Sosa*, 387 F.3d 131 (2d Cir. 2004).  Mr. Gibbs did not waive his rights to appeal inadvertently or by mistake.  *See United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004) (stating that a waiver of rights must be knowing and voluntary); *United States v Calderon*, 391 F.3d 370 (2d Cir. 2004) (dismissing indictment where defendant did not knowingly waive his right to appeal deportation order).  The denial of Mr. Gibbs's waiver application by the Immigration Judge and the BIA did not preclude judicial review.  *See United States v. Perez*, 330 F.3d 97 (2d Cir. 2003).  In fact, as the recital above makes clear, Mr. Gibbs did appeal the BIA decision to the Fourth Circuit and obtained unsuccessful review.  He also failed to convince that court to grant his motion for rehearing.  Thus, not only was Mr. Gibbs not denied court review, but he pursued his case into court and lost.

Finally, the Court cannot conclude that Mr. Gibbs suffered from some "fundamental unfairness" because BIA followed the binding decision of the Attorney General in *Soriano* rather than persist in its own prior interpretation.  "An underlying removal order is 'fundamentally unfair'

if (1) an alien's 'due process rights were violated by defects in the underlying deportation proceeding,' and (2) 'he suffered prejudice as a result of the defects.'" *United States v. Pallares-Galan*, 359 F.3d 1088, 1095 (9th Cir. 2004) (quoting *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000)). Due process is essentially the right to be "heard at a meaningful time and in a meaningful manner." *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004) (citation omitted). "[D]ue process requires that an alien who faces deportation be provided (1) notice of the charges against him, (2) a hearing before an executive or administrative tribunal, and (3) a fair opportunity to be heard." *United States v. Lopez-Ortiz*, 313 F.3d 225, 230 (5th Cir. 2002) (citing *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953)).

Mr. Gibbs' motion to dismiss the criminal indictment is nothing more than a collateral attack on the decision of the Fourth Circuit on appeal of the BIA deportation order. In both instances, Mr. Gibbs has litigated against the United States concerning his eligibility for a § 212(c) hearing prior to his 1999 deportation. While his reason in the initial litigation was to avoid deportation, his reason now is to invalidate that same deportation to avoid criminal sanctions for his re-entry. Thus, the point of contention is the same: access to a § 212(c) hearing prior to the 1999 deportation. That issue has been litigated and decided against Mr. Gibbs and pursuant to the law of that time. The subsequent decision in *St. Cyr* does not invalidate the finality of the Fourth Circuit's decision; it only reverses the Fourth Circuit's rationale.

This case is fundamentally different from *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987), upon which Mr. Gibbs relies. In *Mendoza-Lopez*, an immigration judge did not properly advise aliens of their rights to suspension of deportation, which caused the Supreme Court to conclude that the aliens' waivers of their rights to appeal were not knowing. *Id.* at 840. In particular,

the Court found that

> where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be *some* meaningful review of the administrative proceeding. . . . Depriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense.

*Id.* at 837-39 (emphasis in original). Mr. Gibbs argues that his deportation proceedings were fundamentally unfair, in line with *Mendoza-Lopez*, "because he was deprived of the opportunity to apply for relief to which he was entitled and had a substantial likelihood of receiving." Def.'s Mem. at 8. This argument must fail. First, as emphasized above, Mr. Gibbs was not prevented from receiving court review of his deportation order; unlike Mr. Mendoza-Lopez, there was full judicial review of the administrative proceeding. Second, Mr. Gibbs was not "entitled" to § 212(c) relief, he was only "eligible" to apply for § 212(c) relief under the *St Cyr* decision. Third, the Attorney General may have wrongly decided *Soriano* and wrongly directed BIA to follow her decision and wrongly persuaded the Fourth Circuit that she was correct, but "wrong" does not make that process "fundamentally unfair" because it was subject to court review. *United States v. Luna*, 436 F.3d 312, 319 (1st Cir. Feb. 9, 2006) ("Under this prong [§ 1326(d)(3)], courts uniformly require a showing of procedural error and prejudice."); *see also*, *United States v. Torres*, 383 F.3d 92, 103 (3rd Cir. 2004) ("In measuring whether an alien's removal proceeding was 'fundamentally unfair,' most circuits ask whether the alien was denied due process.").

## II.  CONCLUSION

For the reasons given, the Court will deny Mr. Gibbs' motion to dismiss. A status conference in this case will be set by the deputy clerk. A memorializing order accompanies this memorandum opinion.


Date: April 25, 2006                                                          /s/
                                                            ROSEMARY M. COLLYER
                                                            United States District Judge